UNITED STATES COURT OF APPEALS

For the Fifth Circuit

_____

No. 95-50438

_____

DEAN DALTON, doing business as Dalton Enterprise;
SHIRLENE DALTON, doing business as Dalton Enterprise,

Plaintiffs-Appellants,

VERSUS

PACCAR FINANCIAL CORP.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas

(A-94-CV-316)

_____

July 9, 1996

Before REAVLEY, GARWOOD, and DeMOSS, Circuit Judges.

PER CURIAM:[1]

Plaintiffs Dean and Shirleen Dalton appeal an order by the

district court which grants summary judgment to Defendant Paccar

Financial Corporation on the basis that, under Georgia law, the

statute of limitations had run on the Daltons' claims.  For the

_____

[1]Pursuant to Local Rule 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

following reasons, we AFFIRM.

## FACTUAL SUMMARY

Paccar Financial Corporation ("Paccar"), a company domiciled in the State of Washington, provides third-party financing for the sale of trucks. In 1985, Paccar repossessed three 1981 Peterbilt Model 359 conventional truck tractors and stored them at a Peterbilt dealership in Knoxville, Tennessee. On September 6, 1985, a Georgia branch of Paccar sold these three trucks to Dean and Shirleen Dalton, d/b/a Dalton Enterprise, Inc. ("Daltons"), who were residents of North Carolina. The sales were made pursuant to contract which contains a "choice of law" clause designating Georgia as the forum state.[1] This suit involves the sale of one of these trucks - "Truck 339."[2]

The parties do not dispute that Truck 339 was inoperable at the time of purchase, in 1985. Several years later, in 1991, the Daltons brought Truck 339 into operable condition. On June 23, 1993, the Texas Department of Public Safety ("DPS") stopped Appellant Dean Dalton at a border check-point near Van Horn, Texas. Dean Dalton presented the papers and license tags for Truck 339. Upon inspection, the officer noticed that Dalton was driving a

---

[1]The contract contains the following clause: "This contract entered into in the State of <u>Georgia</u> and is governed by its law."

[2]Truck 339 either had, or was supposed to have had, Serial Number 1XP9D29X5BP145339.

different truck, Truck 116,[3] which was confirmed to be a stolen vehicle. The DPS seized the truck. After a judicial proceeding, a local court ordered that possession of, and title to, Truck 116 be transferred to Culberson County, Texas.

The Daltons sued Paccar in federal district court alleging that Truck 116 -- the truck seized on June 23, 1993 -- is the vehicle which Paccar sold to them. Paccar disagrees and argues that the truck which it sold to the Daltons was Truck 339. The Daltons original complaint alleged violations of the Texas Deceptive Trade Practices Act, unconscionability, and breach of warranty under Texas state law. The district court, sitting in Texas, applied Texas' rule on choice of law and concluded that the substantive law of Georgia applies. The district court allowed the Daltons to replead under Georgia law. In their amended complaint, the Daltons asserted Georgia state law claims including fraud, negligence, violations of the Georgia Fair Business Practices Act ("GFBPA"), breach of contract, and breach of implied warranty of title. Paccar filed a motion for summary judgment asserting a statute of limitations defense. The matter was referred to a magistrate judge who recommended that the district court grant summary judgment. On May 16, 1995, the district judge adopted the magistrate judge's report and recommendation and entered summary judgment in favor of Paccar. The Daltons appeal from this order.

_____

[3]Truck 116 had Serial Number 1XP9D29X1BP146116. This serial number does not appear anywhere in the sales contract.

3

## JURISDICTION

Jurisdiction is based upon diversity of citizenship, pursuant to 28 U.S.C. § 1332.

## DISCUSSION

### *Choice of Law*

The Daltons first argue that the district court erred in applying Georgia law rather than Texas law. Specifically, they argue that Texas law should apply to their claims because the Georgia choice of law clause in their contract is "narrow" and only applies to claims for breach of contract. In their amended complaint, the Daltons pled claims for negligence, fraud, breach of contract, "unconscionability," "breach of warranty of title," and a GFBPA "laundry list" of violations including: causing actual confusion or misunderstanding as to the sponsorship or certification of goods; causing actual confusion or misunderstanding as to certification or connection by another; representing that goods have sponsorship, approval or characteristics, which they do not have; and representing that goods are of a particular standard, if they are of another. Because the Daltons argue that none of these claims sound in breach of contract, they assert that the Georgia choice of law clause in their contract is inapplicable. Instead, the Daltons argue that

4

the Texas "significant relationship" test applies.[4]

Restatement § 6 states: (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement § 145 states: (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the

---

[4]Texas has adopted the significant relationship test as set forth in §§ 6 and 145 of the Restatement (Second) of Conflict of Laws (the "Restatement")

local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6. (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id. at 577, n.9.*[5]

---

. *Air Disaster at Ramstein Air Force Base, Germany v. Lockheed*, 81 F.3d 570, 576 (5th Cir. 1996).

Restatement § 6 states: (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to

Paccar disagrees and argues that, "however phrased," the "embroidering" of the Daltons' claims, does not change their nature: "the Daltons [sic] complaints are rooted in the sales contract." As such, Paccar argues that they should be governed by

be applied.

Restatement § 145 states: (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6. (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id*. at 577, n.9.

In applying § 6 to this case, we must first identify the state contacts that should be considered. *Gutierrez v. Collins*, 583 S.W.2d 312, 319 (Tex. 1979). Once these contacts are established, the question of which state's law will apply is one of law. *Id*. The number of contacts with a particular state is not determinative. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984). Some contacts are more important than others because they implicate state policies underlying the particular substantive issue. *Id*. Consequently, selection of the applicable law depends upon the qualitative nature of the particular contacts. *Id*.

Under the significant relationship test, the Daltons argue that Texas has the most significant relationship with the substantive causes of action pled. In support, the Daltons argue that appellee is authorized to do business in Texas, and that the seizure of the truck, the investigation, and the state court hearing, all occurred in Texas. For these reasons, the Daltons argue that Texas law should apply.

7

the contracted choice of law clause, which dictates that Georgia law shall apply.  In the alternative, Paccar argues that Georgia has a more significant relationship to the Daltons' claims.  In support, Paccar primarily argues that payment was made in Georgia, "and there is no conduct or behavior of Paccar alleged to have occurred in Texas."

The choice of law rules in our Circuit are well-established.  "In a diversity action, a federal court must apply the choice of law rules of the state in which it sits."  *Klaxon Co. v. Stentor Elec. Manufacturing Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021, 85 L.Ed. 1477 (1941).  "According to Texas law, in all choice-of-law cases, except those contract cases in which the parties have agreed to a valid choice-of-law clause, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue."  *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th Cir.), *cert denied*, 116 S. Ct. 180, (1995) (internal citations omitted); *see also*, *Air Disaster at Ramstein Air Force Base, Germany v. Lockheed*, 81 F.3d 570, 576 (5th Cir. 1996).

To the extent that the parties have contracted to settle their differences under the laws of a particular forum, we do not apply the significant relationship test.  "A forum selection provision in a written contract is prima facie valid and enforceable unless the opposing party shows that enforcement would be unreasonable.  This

8

rule also applies to form contracts containing a choice of forum provision." ***Kevlin Services, Inc. v. Lexington State Bank***, 46 F.3d 13, 15 (5th Cir. 1995). To be enforceable, the law chosen by the parties must have a "reasonable relationship with the parties and the chosen state, and the law of the chosen state must not be contrary to a fundamental policy of the state...." ***Caton v. Leach Corp.***, 896 F.2d 939, 943 (5th Cir. 1990). The parties' choice of law clause should address the entirety of the parties' relationship. ***Id***. If the choice of law clause does not address the general rights and liabilities of the parties, we must return to Texas choice of law rules to determine which law applies. ***Id***. We review a district court's choice of law determination <u>de novo</u>. ***Air Disaster at Ramstein Air Force Base, Germany v. Lockheed***, 81 F.3d 570, 576 (5th Cir. 1996).

In the instant case, we first must ask whether the Georgia choice of law clause, which is found in the parties' sales contract, applies to some, or all, of the Daltons' claims. The answer to this question depends upon how the Daltons' claims are characterized: if characterized as sounding in contract, then the unambiguous choice of Georgia forum provision should prevail and the finding of the district court should be affirmed. To the extent that some or all of the Daltons' claims do not sound in contract, then the significant relationship test applies.

There were at least two complaints filed in this case. The

9

controlling complaint is "Plaintiffs' Second Amended Original Complaint" ("second amended complaint"). The Daltons characterize the claims pled in their second amended complaint as asserting causes of action for, "common law fraud, negligence, breach of implied warranty of title, breach of contract and violations of the Georgia Fair Business Practices Act." After a de novo review of the record, we agree with the district court and hold that the Daltons' claims, however characterized, are derived from, and rooted-in, the sales contract.

Next, we look to see if the law of Georgia is reasonably related to the parties and the causes of action at issue. Under the facts of this case, we hold that it is: Paccar's branch office was located in Georgia and the Daltons have offered no evidence showing that the enforcement of Georgia law would be unreasonable, or that such enforcement would be contrary to a fundamental policy of the state of Georgia. For these reasons, we hold that the Georgia choice of law provision governs.

Alternatively, even if we did hold that the Georgia choice of law provision is inapplicable, we would still hold that the significant relationship test compels the application of Georgia law. As stated earlier, Texas has adopted the significant relationship test as set forth in §§ 6 and 145 of the Restatement (Second) of Conflict of Laws. *Air Disaster at Ramstein Air Force Base, Germany v. Lockheed*, 81 F.3d 570, 576 (5th Cir. 1996).

10

Considering all of the factors discussed in §§ 6 and 145, we hold that the "justified expectations" of the parties, Restatement § 6(2)(d), as well as "the place where the relationship ... is centered", Restatement § 145(2)(d), point strongly to Georgia as having the most significant relationship with the dispute at issue.

*Statute of Limitations*

Adopting the recommendation of the magistrate judge, the district court held that the statute of limitations precludes the Daltons' claims and it granted summary judgment in favor of Paccar, on this basis.[6] Because the order of the district court does not substantively address the issues raised in Paccar's motion for summary judgment, it is necessary to review the district court's order vis-a-vis the analysis in the report and recommendation of the magistrate judge, upon which the district court relied.

The Daltons purchased the three truck tractors in 1985. In 1993, the Texas DPS stopped Mr. Dalton at a border check-point and

---

[6]The limitation periods for Plaintiffs' causes of action are as follows: Claims based upon the Georgia Fair Business Practices Act can not be brought "more than two years after the person bringing the action knew or should have known of the occurrence of the alleged violation." O.C.G.A. § 10-1-401(a)(1). Claims for breach of contract and breach of implied warranty must be brought within four years. O.C.G.A. § 11-2-725(1),(2). Claims for negligence must be brought within four years. O.C.G.A. § 9-3-31. Claims for fraud must be brought within four years. *Hahne v. Wyly*, 406 S.E.2d 94, 96 (Ga. Ct. App. 1991).

seized the subject vehicle because it was reported stolen. The Daltons filed their lawsuit against Paccar in 1994, approximately nine years after the purchase of their trucks.

The Daltons argue that Paccar committed actual fraud, thus tolling the statute of limitations which would otherwise preclude the Daltons' claims. Specifically, the Daltons allege that the Defendant intentionally failed to check the identification numbers on the vehicles prior to sale, and that such failure constituted actual fraud. The Daltons argue that they did not discover the alleged actual fraud until 1993, when the vehicle was seized. Because the four year statute of limitations for actual fraud does not begin to run until the date that the alleged fraud or deception is discovered, the Daltons argue that their complaint was timely filed. The Daltons argue that their causes of action for breach of contract, warranty, and negligence, are subject to the statutory fraudulent tolling exception under Georgia law.

In its motion for summary judgment, Paccar argues that it is entitled to summary judgment because the statute of limitations had expired for the Daltons' claims. Paccar argues that, even if it did sell Plaintiffs the wrong vehicle, the Plaintiffs either knew, or should have known, within the statutory periods, that the vehicle which they received was not vehicle 339. Paccar further argues that the Daltons adduced no summary judgment evidence showing that Paccar acted knowingly or with reckless disregard, or that Paccar acted with an intent to deceive. Paccar argues that,

12

because the Daltons failed to offer any evidence of scienter, the Daltons failed to show fraud and were not entitled to Georgia's fraud-based statutory tolling exception.

Under Georgia law, a cause of action generally accrues on the date when the claim can be successfully maintained. *Limoli v. First Ga. Bank*, 250 S.E.2d 155 (Ga. Ct. App. 1978). However, this limitations period may be tolled "if the defendant committed an act of actual fraud that had the effect of concealing from the plaintiff the existence of the cause of action despite her exercise of reasonable diligence." *Id*.

> Actual fraud involves moral turpitude, *Shipman v. Horizon Corp.*, 245 Ga. 808, 267 S.E.2d 244 (1980), and requires an intentional deception by false representation or by concealment of a fact. *Lodge v. Popham*, 156 Ga. App. 825, 275 S.E.2d 669 (1980). When actual fraud is the gravamen of the underlying action, no independent fraud is required for tolling of the statute of limitation, and the limitation period is tolled until the plaintiff discovers or in the exercise of reasonable diligence should have discovered the fraud.

*Id*. at 96. The Plaintiffs have the burden of proving facts that would toll the statute of limitations. *Edmonds v. Bates*, 342 S.E.2d 476 (Ga. Ct. App. 1986).

In its report and recommendation, the magistrate judge said that the "critical question is whether the Plaintiffs have adequately alleged or established, for purposes of summary judgment, that the Defendant engaged in an activity in a manner that would allow the Court to toll the statute of limitations...."

13

The magistrate judge recognized that the element of fraud would toll the statute of limitations, and he stated that "the Plaintiffs must present sufficient summary judgment evidence to establish that the Defendant acted with the intent to defraud the Plaintiffs."

After conducting a summary judgment hearing, the magistrate judge found that: there "is no allegation or evidence that a confidential or fiduciary relationship existed between the parties"; there "is no evidence that the Defendant committed any act that had the effect of concealing from the Plaintiffs the existence of the cause of action"; "neither Plaintiff testified that the Defendant made any oral misrepresentations to them at the time of sale"; Plaintiffs submitted no evidence "that the Defendant knew that the vehicle was stolen"; "there is no summary judgment evidence that the Defendant altered any documents or took any action, such as altering or concealing the VIN numbers on the truck"; and the Plaintiffs made no effort to "trace the legal genealogy of the vehicle." Based upon these findings, the magistrate judge found that the Daltons had not met their burden of adducing evidence to show that Paccar had committed actual fraud. Accordingly, the magistrate judge found that there was no legal basis upon which the statute of limitations could be tolled. Having found that the statute of limitations had expired, the magistrate judge recommended that Paccar's motion for summary judgment be granted, and the district court adopted the magistrate judge's recommendation.

14

In order to defeat the summary judgment, the Daltons must offer evidence sufficient to create a genuine issue of material fact that Paccar committed an act of actual fraud which had the effect of concealing from the Daltons the existence of their causes of action, despite an exercise of reasonable diligence by the Daltons.

Upon a <u>de novo</u> review of the record, we hold that the Daltons have failed to offer any evidence showing that Paccar knowingly or intentionally concealed information from the Plaintiffs. Furthermore, there is no evidence showing that Paccar defrauded the Daltons, or that the Daltons, for their part, exercised reasonable diligence. To the extent that the Daltons argue that Paccar recklessly or negligently failed to inspect the vehicle identification prior to sale, the Daltons offer no authority imposing such a burden, nor any evidence showing that Paccar failed to conduct such inspection. Having failed to show actual fraud on the part of Paccar, the Daltons are not entitled to a tolling of the statute of limitations on their claims. Accordingly, their causes of action accrued in 1985 and expired no later than 1989. Therefore, Georgia's statutes of limitations bar the Daltons' claims. The district court's order granting summary judgment in favor of Paccar is affirmed.

**CONCLUSION**

15

For the foregoing reasons, the order of the district court is

**AFFIRMED.**